UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 12 CR 87-2 |
| | ) | |
| v. | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| | ) | |
| KALLATT MOHAMMED | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
POSITION PAPER AND SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by its attorney, GARY S. SHAPIRO, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following response to Defendant Kallatt Mohammed's Position Paper and Sentencing Memorandum:

I.    **BACKGROUND**

On May 24, 2012, defendant was charged in this case in a single-count information with theft of government funds, in violation of Title 18, United States Code, Section 641 and 2.  On August 17, 2012, defendant pled guilty to the information pursuant to a written plea agreement.  In the plea agreement, defendant also admitted to a stipulated offense of extortion under color of official right, in violation of Title 18, United States Code, Section 1951.  Sentencing is set for October 19, 2012 at 1:30 p.m.

A.    **Factual Background**

The offense of conviction arose from events that occurred in November 2011, when defendant, along with co-defendant Ronald Watts, stole money from an individual ("CS5")

who, unbeknownst to defendant and Watts, was working with law enforcement. Watts and Mohammed were both Chicago police officers at the time and knew CS5 through their work as police officers. Mohammed and Watts believed that CS5 was transporting money for drug dealers and made arrangements with CS5 to steal from CS5 what defendant and Watts believed to be drug proceeds. Specifically, on November 21, 2011, CS5 informed Watts that he would be transporting money that day. Watts then contacted Mohammed and asked Mohammed to help with taking the money from CS5. Watts told Mohammed to meet with CS5 and pick up a bag, which Mohammed agreed to do. Thereafter, CS5 approached Mohammed near 2795 South Vernon where Mohammed was parked. Mohammed then the bag containing $5,200 from CS5. When CS5 asked Mohammed for some money, Mohammed told CS5 no, but then told CS5 to meet him on King Drive at 30th. A few minutes later, Watts and Mohammed met in the area of 5700 and 5800 South Princeton Avenue, Chicago, Illinois. Watts removed the money from the bag and disposed of the bag in a nearby alley. Mohammed claims that he did not receive any of this money, although Watts did loan him $200.

The stipulated offense to which Mohammed admitted involved a course of conduct from no later than December 11, 2007 through at least May 22, 2008, during which Mohammed and Watts extorted protection payments from drug traffickers in the Ida B. Wells public housing complex. Specifically, Mohammed and Watts, while employed as Chicago police officers, demanded money from heroin and crack cocaine dealers at the Wells housing

2

complex in exchange for not arresting narcotics traffickers. Some of these protection payments came from individuals who were cooperating with the government.

### B. The Presentence Investigation Report

Defendant's memorandum accurately sets forth the guidelines calculation set forth in the Presentence Investigation Report ("PSR"). In sum, the PSR concludes that the total offense level is 17 and defendant has a criminal history category of I. As a result, the advisory guidelines range is 24-36 months' imprisonment.

## II. ARGUMENT

### A. A Minor Participant Reduction Should Not be Applied for the Offense of Conviction or the Stipulated Offense.

The government agrees with the calculation set forth in the PSR other than the application of the reduction for minor participant pursuant to section 3B1.2(b) with respect to the offense of conviction.[1] The minor participant reduction is not appropriate given the defendant's involvement in the offense of conviction. The commentary to Guideline section 3B1.2 defines a minor participant as one who is "substantially less culpable than the average participant" in the offense and "who is less culpable than most other participants, but whose role cannot be described as minimal." § 3B1.2, Application Notes 3(a) and 5. "[T]he controlling standard is whether the defendant is substantially less culpable than the average participant in the offense." *United States v. Saenz*, 623 F.3d 461, 468 (7th Cir. 2010).

---

[1] However, the government also notes that because of the grouping rules, the application of this reduction does not impact the overall adjusted offense level.

3

The PSR reasons that the minor participant reduction applies because, although "the defendant played a significant role in the instant offense," "his role does not appear to have been integral to the success of the offense" because "Watts could have easily met with CS5 himself to receive the money." PSR at 9, para. 31. This rationale does not conform with existing standard for determining whether a defendant is a minor participant. The issue is not whether the defendant's conduct was necessary for the crime to occur, but whether the defendant is "substantially less culpable than the average participant." Defendant has failed to make that showing. Although Watts orchestrated the plan to steal the money from CS5, defendant played a significant role by actually meeting with CS5, taking the money from CS5, and transporting the money to a meeting with Watts. Although Mohammed claims that he did not keep any of the money, that does not diminish the significant role that he played in the actual offense conduct. As such, the minor participant reduction should not apply.

Defendant also argues that he should be given a minor participant reduction for the stipulated offense. The government and the PSR disagree. There are no facts before the court that would support a minor participant reduction for the stipulated offense. In both the plea agreement and Defendant's Version of the Offense, defendant admits that he and Watts extorted protection payments from drug dealers on multiple occasions. In addition, the PSR cites to defendant's post-arrest interview, in which he admitted to personally accepting protection payments on at least three occasions. PSR at 5, para. 11. On this record, the PSR correctly concludes that there is no basis for granting Mohammed a minor participant

reduction. Defendant abused his position as a police officer to extort protection payments from drug dealers on multiple occasions. These facts do not establish any basis for a reduction under section 3B1.2.

**B.      Defendant Should Receive a Sentence Within the Advisory Guidelines Range.**

As set forth below, the Section 3553(a) factors weigh in favor of a sentence within the advisory guidelines range in this case.

**1.      Legal Standards**

Criminal sentencing has four purposes – retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010).[2] Title 18, United States Code, Section 3553(a) sets forth the factors to consider when determining a sentence that is sufficient, but not more than necessary, to comply with these purposes. But first, the Court must calculate the applicable Guidelines range, which provides a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *see also* 18 U.S.C. § 3553(a)(4). Next, the Court must consider the other § 3553(a) factors. *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008).

---

[2] *See also* 18 U.S.C. § 3553(a)(2)(A)-(D) ("(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

Close adherence to the sentencing guidelines will reduce sentencing disparities across defendants and districts, which is itself a statutorily-mandated factor. 18 U.S.C. § 3553(a)(6); *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"). A court that sentences within a properly calculated Guidelines range necessarily gives weight and consideration to avoiding unwarranted disparities. *United States v. Turner*, 604 F.3d 381, 389 (7th Cir. 2010).

In addition, the Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. There is certainly no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and there is "broad" sentencing discretion post-Booker. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

Major deviations from the advisory range are more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense. *United States v. Carter*, 538 F.3d 784, 790 (7th Cir. 2008). Similarly, the Seventh Circuit admonishes that sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable. *Id.*; *see also United States v. Vrdolyak*, 593 F.3d 676, 681-83 (7th Cir. 2010).

### 2.      Section 3553(a) Factors

In this case, the Section 3553(a) factors also weigh in favor of a sentence within the advisory guidelines range of 24 to 36 months' imprisonment. Specifically, the nature and circumstances of the offenses warrant a sentence within this guidelines range. Defendant was a sworn Chicago Police Officer who used his position for his own illegal financial gain. Rather than combat the drug trafficking that plagued the Ida B. Wells public housing complex, he accepted money from the drug traffickers in exchange for turning a blind eye to their illegal activities. Defendant points to personal circumstances that contributed to his participation in this conduct. The Court can and should consider these issues but they are not a sufficient excuse for engaging in this sort of conduct for months. In addition, these arguments carry less weight given that defendant was willing to jump back into the same sort of conduct several years later, when asked. Indeed, with respect to the conduct with CS5, defendant was willing to work with a person who he believed to be a drug courier to help the drug courier rip off his organization. In sum, over the course of several years, defendant

7

abused his position as a Chicago police officer to work for, rather than against, drug traffickers in Chicago. These are serious offenses that deserve a sentence within the advisory guidelines range.

A sentence within the guidelines range is also needed in this case to advance the purposes of sentencing set forth in section 3553. For example, a sentence of imprisonment within the applicable guidelines range would help to reflect the seriousness of corrupt behavior by police officers offenses, promote respect for the law, and provide just punishment for the offense. In addition, a sentence of imprisonment within the guidelines range may help to deter others from engaging in similar conduct. It is not likely to go unnoticed if a Chicago police officer is sent to prison for this sort of conduct.

For all of these reasons, the section 3553(a) factors weigh in favor of a sentence within the advisory guidelines range of 24-36 months' imprisonment.

## <u>CONCLUSION</u>

WHEREFORE, the government respectfully requests that the Court sentence defendant to a sentence within the advisory guidelines range of 24-36 months' imprisonment.

Respectfully submitted,

GARY S. SHAPIRO
Acting United States Attorney

By:    s/Margaret J. Schneider
            MARGARET J. SCHNEIDER
            Assistant United States Attorney
            219 S. Dearborn Street, 5th Floor
            Chicago, Illinois 60604
            (312) 353-1875

Date: October 11, 2012