```
1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
2                      EASTERN DIVISION


3
   UNITED STATES OF AMERICA,      )    No. 11 CR 143-1
4                                 )
                   Plaintiff,     )
5                                 )
              v.                  )    Chicago, Illinois
6                                 )    July 17, 2012
   ISHMON WALKER,                 )    2:20 p.m.
7                                 )
                   Defendant.     )    Guilty Plea
8

9              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE SHARON JOHNSON COLEMAN
10

11 APPEARANCES:

12 For the Government:       HON. GARY S. SHAPIRO,
                             United States Attorney, by
13                           MS. YASMIN N. BEST,
                             Assistant United States Attorney
14                           219 South Dearborn Street
                             Chicago, Illinois  60604
15

16 For the Defendant:        MR. ROBERT A. LOEB
                             190 South LaSalle Street
17                           Suite 520
                             Chicago, Illinois  60603-3410
18

19

20

21

22

23           TRACEY DANA McCULLOUGH, CSR, RPR
                   Official Court Reporter
24              219 South Dearborn Street
                        Room 1426
25              Chicago, Illinois  60604
                     (312) 435-5570
```

1          THE CLERK:  11 CR 143, U.S. versus Ishmon Walker for

2   plea.

3          MS. BEST:  Good afternoon, Your Honor.  Yasmin Best

4   on behalf of the United States, standing in for Christopher

5   Grohman.

6          MR. LOEB:  Good afternoon, Your Honor.  Robert Loeb,

7   L-O-E-B, on behalf of Ishmon Walker, who is present.

8          THE COURT:  Mr. Walker.

9          DEFENDANT WALKER:  How you doing.

10          THE COURT:  And we also have somebody from Probation.

11          MR. LOEB:  Judge, Pretrial Services is here.

12          THE COURT:  Pretrial.

13          MR. LOEB:  In addition to being here for a change of

14   plea, I filed what I believe to be a rather routine motion to

15   eliminate home monitoring and a curfew.  And it's my belief

16   that the government has no objection and Pretrial Services has

17   no objection.  I'm addressing it now just because if there is a

18   need for Pretrial to wait while we do the plea, obviously

19   they're willing to do so.  But if there is not, she's got other

20   things that she could tend to.

21          THE COURT:  Are you requesting to step out and -- do

22   you have another event to go to?

23          FEMALE PRETRIAL SERVICES OFFICER:  Your Honor,

24   certainly I can wait if you need me to.

25          THE COURT:  Well, I guess -- maybe the Court is -- no

 1    one has a problem with this, and there's no question about

 2    this?  I mean, there is -- I'm used to the government actually

 3    asking for other things at the close of a plea such as this.

 4    And I'm -- now I'm getting you want him to have more freedom.

 5            MS. BEST:  Your Honor, I've spoken to Mr. Grohman.

 6    This isn't my case.  But from my understanding he does not

 7    object to the change in the conditions.  And I think it's just

 8    to be expedient so that Pretrial Services doesn't have to stay

 9    for the whole hearing --

10            THE COURT:  Oh, I don't -- if you don't have that

11    objection, and the Court was just a little bit surprised

12    considering the maximums here and considering what the usual

13    situation has been for the government on cases involving a lot

14    less time than this in the future, they're ready to take him

15    away.  So in this case we're not even -- not only are we not

16    taking him away, we are saying, oh, let's just go ahead and

17    take away curfews and everything else.  So as long as it's on

18    the record that the government's not objecting and Pretrial

19    Services isn't -- and after the Court -- if the Court feels the

20    need to have you come back, I will at the close, but I don't

21    think you need to wait.

22            FEMALE PRETRIAL SERVICES OFFICER:  Thank you, Your

23    Honor.

24            THE COURT:  If you can close the door on your way

25    out, that will be fine.

1              FEMALE PRETRIAL SERVICES OFFICER:  Yes, Your Honor.

2              THE COURT:  Thank you.  All right.  Please let's

3    swear in your client.

4        (Defendant duly sworn.)

5              MS. BEST:  Your Honor, I have here the signed plea

6    agreement, which I'm going to tender up to the Court.

7              THE COURT:  No, you can keep it there until I ask for

8    it.  Thank you.  All right.  Mr. Walker -- and, Counsel,

9    correct me if I'm wrong, we are here for a change of plea.  And

10   I believe everyone is ready.  Government, yes?

11             MS. BEST:  Yes, Your Honor.

12             THE COURT:  Defense, yes?

13             MR. LOEB:  Yes.

14             THE COURT:  All right.  And, sir, before I can accept

15   any change of plea, this Court has to make a determination that

16   you are competent to do that at this time, that you have had

17   assistance of your counsel, that you have understanding

18   fully -- a full understanding of your trial rights and your

19   appeal rights, that you understand the nature of the charges

20   against you, that your plea is voluntary, and that there's a

21   factual basis for your plea.  Do you understand that, sir?

22             DEFENDANT WALKER:  Yes, I do.

23             THE COURT:  Sir, I've put you under oath to question

24   you a bit about your competency and about this case.  During

25   any time, any part of this procedure if you wish to consult

1    with your lawyer, if something doesn't quite sound right,

2    please let me know.  And I'll give you an opportunity to speak

3    to your counsel in private.

4         All right.  Also understand that if you have any

5    false answers to the question that I ask, that this could

6    subject you to a perjury prosecution.  You must also understand

7    that in asking you to answer some of these questions

8    truthfully, which is what I'm asking you to do, you will be

9    waiving your right not to testify against yourself, and some of

10   the statements could be incriminating.  Do you understand that?

11        DEFENDANT WALKER:  Yes, I do.

12        THE COURT:  Sir, what is your full name?

13        DEFENDANT WALKER:  Ishmon, I-S-H-M-O-N, Lavel Walker.

14        THE COURT:  All right.  Mr. Walker, how old are you?

15        DEFENDANT WALKER:  37.

16        THE COURT:  Where do you live?  You don't have to

17   give me the exact address, but where?

18        DEFENDANT WALKER:  Chicago, Illinois.

19        THE COURT:  All right.  And are you married, sir?

20        DEFENDANT WALKER:  Yes, I am.

21        THE COURT:  And how far did you get in school?

22        DEFENDANT WALKER:  I ended up getting my GED.

23        THE COURT:  All right.  So you did some high school

24   actual and then you got your GED afterwards, is that correct?

25        DEFENDANT WALKER:  Correct.

1          THE COURT:  And did you have any schooling or any

2   type of training after that?

3          DEFENDANT WALKER:  No.

4          THE COURT:  Sir, what kind of work have you done in

5   the last three years?  Legitimate work.

6          DEFENDANT WALKER:  In the last three years?

7          THE COURT:  Yes, if any.

8          DEFENDANT WALKER:  Sure.  I was into the truck

9   industry.

10          THE COURT:  And what did you do in the truck

11  industry?

12          DEFENDANT WALKER:  Actually I drove commercial

13  trucking, and I end up owning my own company for a year.

14  Running a few trucks myself.

15          THE COURT:  So you either drove trucks yourself or

16  you managed a company of truck drivers?

17          DEFENDANT WALKER:  Correct.

18          THE COURT:  And are you in good physical health, sir?

19          DEFENDANT WALKER:  Yes, I am.

20          THE COURT:  You're not under any regular medication

21  for anything out of the ordinary as far as a physical ailment?

22          DEFENDANT WALKER:  No.

23          THE COURT:  All right.  Have you taken any drugs or

24  alcoholic beverages in the last 24 hours?

25          DEFENDANT WALKER:  No.

1          THE COURT:  Is there any history of a mental

2    condition which you're under the care of a doctor for or have

3    been?

4          DEFENDANT WALKER:  No.

5          THE COURT:  And is there anything, sir, that you have

6    undergone in the last 24 hours or so that will cause you to be

7    unable to understand what's going on here today?

8          DEFENDANT WALKER:  No.

9          THE COURT:  Defense counsel, is there any doubt as to

10   your client's competency at this time?

11         MR. LOEB:  No doubt, Judge.

12         THE COURT:  Is there any doubt on the part of the

13   government?

14         MS. BEST:  No, Your Honor.

15         THE COURT:  All right.  The Court will find that Mr.

16   Ishmon Lavel Walker is competent to offer a change of plea at

17   this time if he decides to do so at the close of all the

18   Court's questioning.

19         All right.  Sir, can you tell me the name of the

20   lawyer who's representing you.

21         DEFENDANT WALKER:  Mr. Robert Loeb.

22         THE COURT:  All right.  And you've had plenty of time

23   to talk to Mr. Loeb, is that correct?

24         DEFENDANT WALKER:  Correct.

25         THE COURT:  And he's -- you have told him everything

1    about the case that you know, is that correct?

2                DEFENDANT WALKER:  Yes.

3                THE COURT:  And you're satisfied with the efforts and

4    advice that he has made on your behalf?

5                DEFENDANT WALKER:  Yes, I am.

6                THE COURT:  Mr. Walker, you are charged in Counts --

7    two counts here, is that correct?

8                MR. LOEB:  Counts 1 and 2 -- 1 and --

9                THE COURT:  In Counts 2 and 14.  That's what I have.

10   Is there some difference?

11               MR. LOEB:  That's correct.

12               THE COURT:  All right.  You are charged in Count 2 of

13   the indictment with bank fraud in violation of Title 18 U.S.C.

14   Section 1344 and 2, and in Count 14 with aggravated identity

15   theft in violation of Title 18 U.S.C. Section 1028 (a) 1 and 2.

16               And you received a copy of the indictment in this

17   case, is that correct?

18               DEFENDANT WALKER:  Correct.

19               THE COURT:  All right.  And you discussed the

20   indictment and these two counts in particular with your

21   counsel, is that right?

22               DEFENDANT WALKER:  Yes, I did.

23               THE COURT:  All right.  Counsel, without any

24   reference to the facts in this case, what have you told your

25   client about what he's charged with?

1          MS. BEST:  That he is charged with illegally

2    obtaining United States -- or corporate checks from the United

3    States mail and depositing them into banks along with others.

4    Receiving funds from those checks and using false

5    identifications to further that.

6          THE COURT:  All right.  And, sir, do you understand

7    you have discussed these charges with your client, is that

8    correct -- with your lawyer, is that right?

9          DEFENDANT WALKER:  Yes.

10          THE COURT:  All right.  You've also discussed with

11    your lawyer these two charges, and they are the two in which

12    you intend to offer a plea of guilty or at least change your

13    plea, is that right?

14          DEFENDANT WALKER:  Yes.

15          THE COURT:  All right.  Sir, as to these charges and

16    any of the other charges that may have been set forth in the

17    indictment if they were against you, even if they are not being

18    pursued now, you'd have a right to a trial by jury on the

19    charges against you under the Constitution and the laws of the

20    United States.  Do you understand that?

21          DEFENDANT WALKER:  Yes.

22          THE COURT:  Do you also understand, sir, that you

23    have a right to persist in your plea of not guilty?

24          DEFENDANT WALKER:  Yes.

25          THE COURT:  Do you understand that if you continued

1    with your plea of not guilty, you'd have a right to a speedy

2    trial, a right to see and hear all the witnesses called to

3    testify against you, a right to cross-examine those witnesses

4    through your counsel, a right to use the subpoena power of the

5    Court to obtain witnesses on your own behalf?  Do you

6    understand that?

7              DEFENDANT WALKER:  Yes.

8              THE COURT:  Do you also understand that you would be

9    presumed to be innocent at a trial?  That the government would

10   be required to prove you guilty beyond a reasonable doubt

11   before you could be found guilty, and at no time would you have

12   to prove that you are innocent.  Do you understand that?

13             DEFENDANT WALKER:  Yes, I do.

14             THE COURT:  Do you also understand, sir, that at

15   trial while you would have the right to testify if you chose to

16   do so, you'd also have the right not to testify.  And if you

17   chose not to testify, that that decision could not be used as

18   an inference or suggestion of your guilt?  Do you understand

19   that?

20             DEFENDANT WALKER:  Yes, I do.

21             THE COURT:  Sir, if you opted or chose a jury trial

22   in this case, the jury would be composed of 12 regular people

23   such as yourself selected at random.  You and your attorney

24   would have a chance along with the government attorneys to

25   exclude jurors if either side felt that that juror was biased

1    or disqualified for some other reason.  You would also have a

2    certain number of jurors that -- potential jurors that you

3    could excuse by exercising what's called peremptory challenge.

4    Meaning you don't even have to state a cause.  It just has to

5    maybe feel like to you that that person just might not be fair

6    and on your behalf.  And you'd be able to discuss this with

7    your lawyer and participate in the selection of a jury with

8    your lawyer.  Has this been explained to you?

9            DEFENDANT WALKER:  Yes, it has.

10           THE COURT:  All right.  And you understand this, is

11   that correct?

12           DEFENDANT WALKER:  Yes, I do.

13           THE COURT:  Do you understand that if a jury was

14   impaneled in a case if you decided to continue on to trial,

15   that the jury would have to agree unanimously and consider each

16   and every count of the indictment separately?  Do you

17   understand that?

18           DEFENDANT WALKER:  Yes.

19           THE COURT:  Sir, a trial can either be by jury or by

20   the bench, by the judge, by me.  And if you chose to go without

21   a jury, you'd have the right to pursue that path.  If you

22   decided to pursue that path, that the same rules would be in

23   place.  You'd have a right to a speedy trial.  You'd have a

24   right to see and hear all witnesses called against you.  You'd

25   have a right to cross-examination.  You'd have a right to

1    subpoena witnesses on your behalf.  Do you understand that?

2              DEFENDANT WALKER:  Yes, I do.

3              THE COURT:  The same rights, which would include that

4    you would be presumed innocent until the government proved you

5    guilty beyond a reasonable doubt; that you would also have the

6    right not to testify as well as to testify.  And if you chose

7    not to testify, that would not be held against you.  Do you

8    understand that those rights would still be in place if you did

9    not have a jury trial but a jury -- but a trial in front of me

10   the judge, do you understand that?

11             DEFENDANT WALKER:  Yes, I do.

12             THE COURT:  Whether it's a trial by judge or jury,

13   sir, the rules are the law is that you would have to be found

14   guilty beyond a reasonable doubt.  That would be the standard

15   of proof.  Do you understand that?

16             DEFENDANT WALKER:  Yes.

17             THE COURT:  Do you also understand if you were found

18   guilty at the close of a bench or a jury trial, you would have

19   the right to appeal?  That means to take your -- take the

20   decision of guilt to a higher court, another court that would

21   review the ruling that happened in this court.  Do you

22   understand that?

23             DEFENDANT WALKER:  I do.

24             THE COURT:  Do you understand if you plead guilty,

25   you waive all the trial rights I have just set forth in detail?

1   Do you understand that?

2           DEFENDANT WALKER:  Yes.

3           THE COURT:  You understand that if you plead guilty

4   and I accept your plea, there will not be a trial.  I will

5   enter a finding of guilty on that plea and then sentence you on

6   the basis of your plea and on the basis of the presentations

7   and the presentence investigation report and the arguments of

8   counsel.  Do you understand that?

9           DEFENDANT WALKER:  Yes, ma'am.

10          THE COURT:  There is a written plea agreement I

11  believe that's been referred to, is that correct?

12          MS. BEST:  That's correct, Your Honor.

13          THE COURT:  You can keep it right there.  Sir, have

14  any other agreements or promises been made to you that are not

15  in writing?

16          DEFENDANT WALKER:  No.

17          THE COURT:  I ask your counsel to give you the -- if

18  government's counsel can hand the plea agreement to defense

19  counsel.  All right.  Sir, your counsel is handing to you what

20  I believe is a 29-page document, is that correct?

21          DEFENDANT WALKER:  That's correct.

22          THE COURT:  The front of it is entitled plea

23  agreement with your name on it.  And you've had a chance to

24  review this document with the assistance of your counsel, is

25  that correct?

1      DEFENDANT WALKER:  Yes.

2           THE COURT:  All right.  On the back page, page 29

3   there should be a place where it says Ishmon Walker and there's

4   a signature.  Is that, in fact, your signature, sir?

5           DEFENDANT WALKER:  Yes, it is.

6           THE COURT:  All right.  And you signed that after

7   consulting with your lawyer and having a chance to read

8   everything in that document, is that correct?

9           DEFENDANT WALKER:  Correct.

10          THE COURT:  All right.  Will you hand that up,

11  Counsel, please.

12     (Document tendered.)

13          THE COURT:  Will the government please state what the

14  maximum penalties are in this case.

15          MS. BEST:  Yes, Your Honor.  As to Count 2 of the

16  indictment, the maximum term of imprisonment is 30 years.  It

17  also carries a maximum fine of a million dollars or twice the

18  gross gain or gross loss.  As to Count 14, it carries a

19  two-year statutory maximum as well as a two-year statutory

20  minimum, which must run consecutive to any sentence imposed as

21  to Count 2.  It also carries a maximum fine of $250,000.

22          THE COURT:  Sir, do you understand that -- do you

23  have any restitution here, Counsel?

24          MS. BEST:  Your Honor, there is restitution mentioned

25  in paragraph 17, and I believe the restitution amount is

1    upwards of a million dollars.  It's broken down between the two

2    victims.

3              THE COURT:  So somewhere near the $1 million mark, is

4    that correct?

5              MS. BEST:  I apologize, Your Honor.  The restitution

6    as to victim Bank of America is $759,826.  And as to victim JP

7    Morgan Chase, it is $686,448.

8              THE COURT:  All right.

9              MS. BEST:  Minus any credit for funds repaid prior to

10   sentencing.

11             THE COURT:  Approximately $1.4 million in total.  And

12   any -- an assessment of $100 as to each count?

13             MS. BEST:  Yes, Your Honor.  And the forfeiture

14   allegation will be dismissed at sentencing.

15             THE COURT:  Do you understand that those are the

16   maximum, the maximum possible sentences you could receive in

17   this case, sir?

18             DEFENDANT WALKER:  Yes.

19             THE COURT:  All right.  And what is the government's

20   calculation of the offense level in this case?

21             MS. BEST:  Your Honor, the government's calculation,

22   the final calculation is that the defendant is a category 6 and

23   has an offense level of 33.  There is a dispute between the

24   parties as to one of the enhancements that's applicable on

25   Count 2 of the indictment --

1          THE COURT:  I'm sorry.  Can you say that again.

2  Maybe I'm hearing wrong.

3          MS. BEST:  I'm sorry.  There's a disagreement between

4  the parties as to one enhancement, but the government's total

5  calculation for Count 2 as well as a stipulated offense is that

6  the total offense level is 33 and the criminal history category

7  is 6.  It's laid out in the plea agreement.  It's my

8  understanding that the defendant's position is that the total

9  offense level is 31 and that the criminal history category,

10  while properly calculated is overstated, and the defendant

11  should be sentenced as if he were in category 5.

12          MR. LOEB:  That is correct, Judge.

13          THE COURT:  All right.  One second.

14          MS. BEST:  And it's summarized on page 17, Your

15  Honor, of the plea agreement.

16          THE COURT:  All right.  Mr. Walker, have you

17  discussed with your lawyer about the differences that both the

18  defense and the government see as far as the calculations?

19          DEFENDANT WALKER:  Yes.

20          THE COURT:  All right.  And do you understand that

21  this Court will not be able to determine what advisory

22  guidelines really apply for your case until after the

23  presentence investigation report has been completed and that

24  you and the government have both had the opportunity to

25  challenge and to address the presentations to the Court?

1      DEFENDANT WALKER:  Yes.

2      THE COURT:  You understand that after there is a

3  determination on what the guidelines are in this case, that it

4  is the judge who has the authority to impose a sentence that is

5  either more severe or less severe or exactly what they're

6  asking for on one side or the other, but it all -- not only are

7  the guidelines in place, but even more so the 3353 (a) factors,

8  which make sure that the sentence is appropriate.  Do you

9  understand that the Court has the final say?

10      DEFENDANT WALKER:  Yes.

11      THE COURT:  Has anyone forced you or threatened you

12  in any way to plead guilty here?

13      DEFENDANT WALKER:  No.

14      THE COURT:  Has anyone -- apart from the plea

15  agreement, as I asked you earlier, have there been any promises

16  made to cause you to change your plea?

17      DEFENDANT WALKER:  No.

18      THE COURT:  Your decision to change your plea is

19  totally voluntary even though you understand that the final

20  decision as to what your sentence will be rests with this

21  Court?

22      DEFENDANT WALKER:  Yes.

23      THE COURT:  Will the government please summarize what

24  its evidence is with respect to Counts 2 -- you can do it

25  either separately, or if it's all together, however is your

1    pleasure, 2 and 14.

2            MS. BEST:  And, Your Honor, I'm going to try to not

3    restate.  This is a lengthy factual basis.

4            THE COURT:  All right.

5            MS. BEST:  So I'm going to try and summarize it.  But

6    as to Count 2 of the indictment, the government's evidence

7    would show that on or about August 11th, 2008 the defendant

8    committed bank fraud in the, the following way:

9            Between June 2008 and November 2010 the defendant

10   participated in a scheme to defraud various financial

11   institutions.  And as part of that scheme the defendant asked a

12   number of co-schemers who worked at banks to provide him with

13   account information of individuals who had bank accounts with

14   large balances and which had not been accessed recently.  That

15   identifying information for those accounts was relayed to the

16   defendant and other co-schemers, through which they then

17   accessed those accounts.

18           Also as part of the scheme, the defendant received

19   corporate checks that he knew were stolen from the United

20   States mail, and deposited those stolen checks into other

21   accounts so that he and others could receive the proceeds from

22   those checks.

23           As to the facts underlying Count 2 of the indictment,

24   the defendant attempted to steal money from at least three

25   victims.  Working with a co-defendant, who was a Chase bank

1    employee, to access the identifying information of victim B,

2    that co-defendant provided Mr. Walker with the identifying

3    information for victim B, and then the defendant had a fake

4    identification made bearing that stolen information with a real

5    picture of another co-defendant.

6           And as the defendant then instructed, that other

7    person then entered Chase Bank on or about August 11th, 2008,

8    approached the Chase Bank employee, presented that fake

9    driver's license with the identifying information of victim B,

10   and requested a $50,000 wire transfer be made from an account

11   controlled by victim B to an account controlled by one of the

12   defendant's co-schemers.  This also relates to Count 14 of the

13   indictment, Your Honor, in which the defendant is charged with

14   aggravated identity theft for having the identifying

15   information of victim B or Individual B.

16          So those are the facts as to Count 2 of the

17   indictment that was laid out in the factual basis.  There are a

18   number of different ways in which this scheme was perpetrated

19   by the defendant and his co-schemers.

20          And I would just lastly say as to Count 14, Your

21   Honor, that at the time that the means of identification, that

22   fake driver's license was obtained using the name, address,

23   date of birth, bank account number, Social Security number of

24   that victim B, the defendant knew that victim B was, in fact, a

25   real person.

1        THE COURT:  Is there anything else from the

2  government?

3        MS. BEST:  As to Counts 2 and 14, no, Your Honor.

4  There is a stipulated offense in the plea agreement, but I

5  don't know if Your Honor wants me to go through that.

6        THE COURT:  I don't think it's necessary.  All right.

7  Have you heard the statement of the assistant U.S. Attorney

8  here, sir?  Sir?

9        DEFENDANT WALKER:  Yes.

10        THE COURT:  All right.  You heard everything she

11  stated, is that correct?

12        DEFENDANT WALKER:  Correct.

13        THE COURT:  You've had a chance to review the

14  stipulated factual basis here?

15        DEFENDANT WALKER:  Yes.

16        THE COURT:  Which means the agreed to factual basis?

17        DEFENDANT WALKER:  Yes.

18        THE COURT:  All right.  Is it a correct statement

19  that she has read?

20        DEFENDANT WALKER:  Yes, it is.

21        THE COURT:  And do you disagree with any part of the

22  statement as she has put it forth and summarized today?

23        DEFENDANT WALKER:  No.

24        THE COURT:  Is there anything you want to add to this

25  summary that she gave?

1          DEFENDANT WALKER:  No.

2          THE COURT:  Then, sir, the Court asks you at this

3     point what is your plea to Count 2 of the indictment?

4          DEFENDANT WALKER:  Guilty.

5          THE COURT:  And what is your plea to Count 14 of the

6     indictment?

7          DEFENDANT WALKER:  Guilty.

8          THE COURT:  And, sir, since you have acknowledged

9     that you are, in fact, guilty of Count 2 and Count 14 of the

10    indictment, you have had the able assistance of Counsel, you

11    know your rights to trial, you know what the maximum possible

12    punishments are as to each of the counts, and that you have

13    stated and shown that you are voluntarily changing your plea

14    and pleading guilty, this Court accepts your plea of guilty to

15    Counts 2 and 14 and enters a judgment of guilty on Count 2 and

16    Count 14.

17         All right.  This Court will -- now, you all want the

18    delay on the presentence investigation report, is that correct?

19         MS. BEST:  Your Honor, I did want to note for the

20    record, one, that this is a plea pursuant to Rule 11 (c) 1 (c),

21    and so the government is requesting a delay in the sentencing

22    date.  I understand that there is a trial scheduled to begin

23    October 29th in which the defendant's testimony may be

24    required.  So in speaking to Mr. Grohman, he has requested that

25    we set over the decision on a sentencing date until it becomes

1    clear what's going to happen with that trial.

2            Also, because this is an 11 (c) 1 (c), I did want to

3    just mention that there is a provision in the plea agreement in

4    which the defendant waives his appellate rights.  So I did want

5    that on the record.  That's on page 24 and 25 of the plea

6    agreement.

7            THE COURT:  All right.  Even though I think the Court

8    alluded to it, let me make it even more clear, sir.  Part of

9    the agreement here is, I referred to earlier that if you went

10   to trial, you'd have a right if you were convicted to take that

11   finding of guilty to another court, court of review.  That's an

12   appellate right.  Well, you are waiving those rights based on

13   this plea agreement.  You will have not have the right to

14   challenge the convictions in Counts 2 and 14 at the appeal

15   level.  Do you understand that?

16           DEFENDANT WALKER:  Yes, I do.

17           THE COURT:  So, sir, what we're going to do here as

18   to your sentencing and the pretrial sentence investigation

19   report that you would normally have to do by, first of all,

20   meeting with the presentence investigation staff, Probation,

21   that will be deferred.  And it will be -- we can set -- we'll

22   set a status date on this in mid-November.  And then we can go

23   from there on setting up the presentence investigation report.

24   Does that sound fair to each side?

25           MR. LOEB:  Yes, Judge.

1          MS. BEST:  Yes, Your Honor.

2          THE COURT:  The Court also believes that there is an

3    issue that your lawyer brought up earlier at the start of this,

4    which dealt with a motion to change some of the conditions of

5    your bond.  Counsel, you want to speak to that.

6          MR. LOEB:  Yes, Judge.  We are asking to lift the

7    curfew and the home monitoring conditions.  The reason for that

8    is his employment.  He works for --

9          THE COURT:  How long has he been on curfew?  Since

10   this matter has been --

11         MR. LOEB:  Yes.

12         THE COURT:  So that's since when?

13         MR. LOEB:  A year and a quarter or so.

14         THE COURT:  All right.  And during that period of

15   time has he been working at the same job?

16         MR. LOEB:  No.  Same field, but different jobs.  As a

17   matter of fact, he had to leave one job because of those

18   conditions.  And now the same possibilities have, have reared

19   its head such that he sometimes needs to work particularly long

20   hours on short notice.  And it's for that purpose that we are

21   seeking lifting those conditions.

22         THE COURT:  And can you give more specifics about

23   what kind of hours we're talking about here?

24         MR. LOEB:  He is sometimes --

25         THE COURT:  You can ask him.  He's under oath.

 1              MR. LOEB:  Sure.  You're sometimes called in or --

 2              THE COURT:  What company is it?

 3              DEFENDANT WALKER:  It's a company called NetCorp.

 4     It's contracted by I guess his son's -- it's named EJR.  We

 5     move candy for Ferrara Candy Company.  You know, shuttle their

 6     candy back and forth.

 7              THE COURT:  And where do you -- what's your region?

 8              DEFENDANT WALKER:  Midwest.

 9              THE COURT:  So what does that include?  As far north

10     as what?  Wisconsin?

11              DEFENDANT WALKER:  Yeah, the northern states.

12              THE COURT:  Wisconsin, Michigan?

13              DEFENDANT WALKER:  Yeah.  Ohio, Indiana.  Iowa

14     sometimes.

15              THE COURT:  And are those overnight trips, day trips?

16     What are they?

17              DEFENDANT WALKER:  They're normally day trips, but it

18     end up can be some night trips in there.  And I have to

19     actually turn it down and tell them I can't do it based on my,

20     my conditions of the bond.  So, you know, that becomes to be a

21     slight problem sometimes because I mean -- you know, it's --

22     he's looking at it like I can't perform my job function, you

23     know.

24              THE COURT:  And how, how late are the night jobs?

25              DEFENDANT WALKER:  Oh, sometimes based on where we

1    go, if we get to the customer and they don't get us unloaded in

2    time, maybe we have to stay overnight until the next, until the

3    next morning, get reloaded to come back.  So sometimes it could

4    be one night I'll stay.  Then we'll be back home.  You know,

5    like I say, I'm normally local, but at some point in time, you

6    know, I have to go -- I'm unable to go to different states.

7    Because of the, the requirements, I was unable to go to the

8    northern states.  That's what they told me.

9            THE COURT:  And what about the home monitoring?  How

10   does that restrict you?  You've been on that for a year and a

11   half.

12           DEFENDANT WALKER:  Oh, because I couldn't leave -- I

13   can't leave between the hours of 9 and 6 in the morning.

14           THE COURT:  And what are your normal -- what days do

15   you work?

16           DEFENDANT WALKER:  Monday through Fridays.

17   Sometimes Saturday and sometimes Sunday.  It's based on --

18           THE COURT:  Well, you know, on one hand the Court

19   always likes to hear about people working.  On the other hand,

20   I don't know about this being made so totally convenient for

21   you.  Some inconvenience has to happen.  This Court does not

22   mind since there's no objection adjusting your curfew on the

23   Monday through Friday so that you have no curfew.  So if you

24   have overnight runs Monday through Friday, you now can do them.

25   All right.  Or late night runs.  All right.  The Court is going

1   to keep in place the restrictions on Saturday and Sunday.  All
2   right.

3           So Monday through Friday restrictions, which would
4   mean no home monitoring and no curfew.  Saturdays and Sundays
5   you don't have that option.  All right.  So if you can get it
6   done during the day, fine.  If not, he's going to have to deal
7   with it.  Okay.  Anything else from the government?

8           MS. BEST:  No, Your Honor.  I just think we were
9   going to get a mid-November date.  And I wasn't sure if --

10          THE COURT:  Yes, but anything else before we get the
11  date?

12          MS. BEST:  Nothing from the government.

13          THE COURT:  Anything else from the defense?

14          MR. LOEB:  No, Judge.

15          THE COURT:  Sir, do you understand the changes in the
16  conditions?

17          DEFENDANT WALKER:  Yes, I do.

18          THE COURT:  And you understand that if those
19  conditions are violated in any way with my name on them, that
20  you will be back before the Court, and I'll make it so that
21  you're restricted a little bit more?  Do you understand that?

22          DEFENDANT WALKER:  Yes, I do.

23          THE COURT:  Okay.  Let's go to mid-November.

24          THE CLERK:  November 14th at 9:45.

25          MR. LOEB:  That's fine.

1        THE COURT:  All right.  If that is it, and thank you

2    very much everyone.

3            MS. BEST:  Thank you, Your Honor.

4            MR. LOEB:  Thank you, Judge.

5            THE COURT:  All right.  Good luck to you, sir.

6            DEFENDANT WALKER:   Thank you.

7                        CERTIFICATE

8        I HEREBY CERTIFY that the foregoing is a true,

9    correct and complete transcript of the proceedings had at the

10   hearing of the aforementioned cause on the day and date hereof.

11

12   /s/TRACEY D. McCULLOUGH                July 2, 2014

13   Official Court Reporter                    Date
     United States District Court
14   Northern District of Illinois
     Eastern Division

15

16

17

18

19

20

21

22

23

24

25